IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC CAYCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:20-cv-797-JTA |
| | ) | (WO) |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), the claimant, Eric Cayce, brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[1] The Commissioner denied Cayce's claim for supplemental security income ("SSI"). (*Id.*) The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 9, 10.)

After careful scrutiny of the record and the briefs submitted by the parties, the Court finds that the decision of the Commissioner is due to be REVERSED and this matter be REMANDED for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] Document numbers, as they appear on the docket sheet, are designated as "Doc. No."

## I.     PROCEDURAL HISTORY AND FACTS

Eric Cayce ("Cayce") was born on July 29, 1984 and was 35 years old at the time of the administrative hearing held on November 13, 2019.  (R. 46, 53, 68.)[2]  He graduated high school and has attended some college.  (R. 49, 53, 68, 71.)  Cayce's work history is scant, and the last job he performed was an automotive detailer for Nissan from 2011 to 2012.  (R. 71.)  Cayce alleges a disability onset date of May 10, 2018 (R. 46), due to brain and spinal surgery, nerve damage, attention deficit disorder, dyslexia, a rod in his left leg, balance problems, obsessive compulsive disorder, a shunt in his head and anxiety disorder. (R. 322.)

Cayce protectively filed an application for SSI on June 18, 2018, under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*.  (R. 46.)  The application was denied on October 23, 2018 (R. 46, 132), and Cayce requested an administrative hearing (R. 46, 137).

Following an administrative hearing, the Administrative Law Judge ("ALJ") denied Cayce's request for benefits in a decision dated December 27, 2019.  (R. 43-59.)  The Appeals Council subsequently denied his request for review and the decision by the Commissioner became final.[3]  (R. 1-4.)  On October 5, 2020, Cayce filed the instant action appealing the decision of the Commissioner.  (Doc. No. 1.)

---

[2] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case.  (Doc. No. 18.)

[3] *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) ("When, as in this case, the ALJ denies benefits and the [Appeals Council] denies review, [the court] review[s] the ALJ's decision as the Commissioner's final decision.")  (citation omitted).

2

## II.    STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Cayce v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)).   Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence.  *Id.* at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner.  *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210.  However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

Sentence four of 42 U.S.C. § 405(g) authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."   42 U.S.C. § 405(g).   The district court may remand a case to the

Commissioner for a rehearing if the court finds "either . . . the decision is not supported by substantial evidence, or . . . the Commissioner or the ALJ incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

### III.    STANDARD FOR DETERMINING DISABILITY

An individual who files an application for Social Security SSI must prove that he is disabled. *See* 20 C.F.R. § 416.920. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(3)(A); 20 C.F.R. § 416.905(a).

Disability under the Act is determined under a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920(a). The evaluation is made at the hearing conducted by the ALJ. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities. 20 C.F.R. § 916.972(a). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 416.971. Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(c). Absent such impairment, the claimant may not claim disability. *Id*. Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an

4

impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 416.920(d), 416.925, and 426.926. If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 416.920(d).

If the claimant has failed to establish that he is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis. At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 416.920(f). The ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 416.920(f). If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 416.920(g). In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with his RFC, age, education, and work experience. 20 C.F.R. § 916.920(g). Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. §§ 416.912(b), 416.960(c).

## IV.   ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ in this case found that Cayce has not engaged in substantial gainful activity since the application date of June 18, 2018. (R. 48.) The ALJ determined that Cayce suffers from the following severe impairments that significantly limit his ability to perform basic work activities: adult

medulloblastoma, left leg fracture, and generalized anxiety disorder. (*Id.*) The ALJ concluded that Cayce's impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ's summary of Cayce's physical impairments is brief.

> Mr. Cayce does not meet or medically equal the requirements of listing 1.06, *fracture of the tibia,* as diagnostic imaging demonstrated a solid union (of his broken bones). Mr. Cayce has acknowledged that he has recovered from a broken left leg and regained a normal capacity for walking. Mr. Cayce's tumor does not meet or medically equal the requirements of listing 11.05, *benign brain tumors,* as the medical evidence demonstrated that he has undergone shunt revisions that have produced a good result. Doctors have described Mr. Cayce's symptoms as stable without escalating treatment from 2015 to the present (Exhibit 4F; Exhibit 9F; Exhibit 11F).

(R. 48) (emphasis in original). The ALJ separately summarized Cayce's mental impairments. (R. 48-50.) The ALJ found that Cayce had moderate limitations in each of the following areas: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting and managing oneself. (R. 49.)

After consideration of the entire record, the ALJ determined that Cayce retains the RFC to perform light work as defined in 20 C.F.R. § 416.967(b).[4] (R. 50.) The ALJ found the following workplace limitations applicable to Cayce:

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

He could operate hand controls frequently with his right hand and with his left hand.  He can handle items frequently with his right and left hands.  He can occasionally climb ramps and stairs.  He cannot climb ladders, ropes, or scaffolds.  He can occasionally balance, stop, kneel, crouch, and crawl.  He cannot work at unprotected heights or around moving mechanical parts.  He could perform simple, routine, and repetitive tasks, but not at a production rate pace (e.g. assembly line work).  [He] could make simple work-related decisions.  He could frequently respond appropriately to supervisors, occasionally respond appropriately to coworkers, and occasionally respond appropriately to the public.

(*Id.*)

Based upon the testimony of a vocational expert ("VE"), the ALJ determined that Cayce was precluded from performing his past relevant medium work.  (R. 53.)  The ALJ also found that based upon Cayce's age, education, work experience, and RFC, there are jobs that exist in "significant numbers in the national economy" that he can perform. (R. 54.)  The ALJ further found that Cayce could work as a small parts assembler, price marker, and laundry folder.  (*Id.*)  The ALJ concluded that Cayce had not been under a disability, as defined in the Social Security Act, since June 18, 2018.  (*Id.*)

## V.    DISCUSSION

Cayce presents two arguments on appeal.  First, he argues that the ALJ's RFC is inconsistent with the medical opinions that the ALJ identified as persuasive, rendering either the RFC or the medical opinions unsupported by substantial evidence.  (Doc. No. 14 at 7-13.)  Second, he argues that the Appeals Council erred by failing to consider new and material evidence he submitted.  (*Id*. at 13-15.)

The Court evaluates each of Cayce's arguments below.

A.      The ALJ's determination is not supported by substantial evidence.

Cayce argues that the ALJ committed reversible error by ignoring and discrediting—without explanation—portions of the opinions of Drs. Melvin Williams, Gloria Sellman, and Cryshelle Patterson.  (Doc. No. 14. at 11-13.)  Cayce makes an "all or nothing" argument.   He contends that in a circumstance where the ALJ determines a doctor's opinion is persuasive, the ALJ's decision is not supported by substantial evidence if he does not either include all of the limitations identified by the doctor in his RFC or explain why he has excluded specific limitations.  (*See id.*)  Specifically, Cayce alleges that the ALJ improperly ignored or discredited without explanation Dr. Williams' walking and balancing limitations (*id.* at 8-10); Dr. Sellman's environmental limitations (*id.* 10-11); and Dr. Patterson's mental limitations (*id.* at 11-13).   Cayce concludes that the ALJ's determination is not supported by substantial evidence because he failed to logically bridge the medical evidence to his RFC.  (*Id.* at 9.)

The Commissioner responds that the ALJ's RFC assessment need not "adopt, verbatim, all of the limitations from the medical opinions and prior administrative findings." (Doc. No. 17 at 11.)  The Commissioner first points out that regulatory changes which alter how the agency considers medical opinions and prior administrative findings apply to all claims filed on or after March 27, 2017.  (*Id.* at 6.)   According to the Commissioner, the ALJ's RFC is supported by substantial evidence where he has evaluated the persuasiveness of each medical source and then considered the opinions and findings supplied therein along with all other relevant medical evidence to formulate the RFC.  (*Id.* at 10.)  The Commissioner asserts that the ALJ is not required to explain how he considered

individual findings contained within one source and that the RFC "need not match or mirror the findings or opinions of any particular medical source." (*Id*. at 8, 11.) Thus, according to the Commissioner, the ALJ was entitled to discount portions of the doctors' opinions where those opinions conflicted with other equally persuasive sources so long as his conclusion is supported by the record as a whole. (*Id.* at 11-12.)

The regulations governing claims filed on or after March 27, 2017, abandon the requirement that the ALJ must give "good reasons" for the weight given medical opinions and prior administrative medical findings. *See Nix v. Saul*, Case No. 4:20-cv-00790-RDP, 2021 WL 3089309, at * 6 (N.D. Ala. July 22, 2021). The regulations now direct the ALJ to evaluate the persuasiveness of each medical source using the following five factors: (1) supportability, (2) consistency, (3) length of relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. § 416.920c(c). The ALJ must explain in his decision how he considered the factors of supportability[5] and consistency[6] in his determination of overall persuasiveness of each source. *Nix*, 2021 WL 3089309, at *6; 20 C.F.R. § 416.920c(b)(2) ("[S]upportability . . . and consistency . . . are [t]he most important factors we consider . . . [t]herefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative

---

[5] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1).

[6] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

medical findings in your determination or decision.").  The persuasiveness analysis should turn on whether "the medical source's opinion is (1) supported by the source's own records and (2) consistent with other evidence of record." *Dease v. Kijakazi*, No. 2:20-CV-394-KFP, 2022 WL 428173, at *3 (M.D. Ala. Feb. 11, 2022).  The ALJ is not required to explain how he considered the remaining factors unless he finds two or more medical opinions are equally well-supported and consistent with the record but are not exactly the same.  *Gogel v. Comm'r Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *6 (M.D. Fla. Sept. 20, 2021).

Although the new regulations do not require a precise explanation of how the ALJ considered each finding or opinion within the same source, he must still provide a clear basis for his determination.  *Dease*, 2022 WL 428173, at *3.  *See also Gogel*, 2021 WL 426128, at *9 ("Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review.").  In *Dease*, there were two medical sources—one which mentioned that Dease would miss one to two days of work each week and one which did not.  *Dease*, 2022 WL 428173, at *4.  The ALJ found both sources to be persuasive.  *Id.*  Dease appealed his determination claiming that it was not based on substantial evidence where the ALJ did not account for the missed days of work in his RFC.  *Id.*  The court remanded because the ALJ had found two sources credible, the sources were not consistent with one another, and there was no indication of which portions of the medical source information the ALJ credited.  *Id.*

Here, Cayce makes the same claim of error as Dease —that the ALJ broadly rejected without explanation portions of opinions from medical sources that he otherwise found persuasive. (Doc. No. 14. at 9-12.)  The Court examines each of the claims separately.

1.     Dr. Williams' opinion regarding walking and balance

Cayce first claims error because the ALJ ignored or rejected without explanation Dr. Williams' finding that Cayce is limited to walking four hours a day and could "never balance." (Doc. No. 14 at 8, 9.)  Cayce concludes that the walking finding was ignored because the ALJ's RFC contained no limitation on walking and his designation of light work implies the ability to walk up to six hours per day. (*Id.* at 8-9.)  Likewise, Cayce notes that the ALJ's RFC limitation of "occasional[] balanc[ing]" is inconsistent with Dr. Williams' finding that Cayce could never balance.  He alleges that because the ALJ found Dr. Williams' opinion persuasive, the ALJ committed legal error by disregarding the walking and balancing limitations without providing his reasons. (*Id.* at 9.)

The Commissioner counters that the ALJ also found Dr. Sellman's opinion, which discredited many of Dr. Williams' findings, to be persuasive.  (Doc. No. 17 at 12.)  According to the Commissioner, the ALJ was entitled to, and did, craft his RFC from the record as a whole. (*Id.* at 11.)

The ALJ found Dr. Williams' opinion to be persuasive.  (R. 52.)   The ALJ summarizes Dr. Williams' opinion as follows:

> In September 2018, Dr. Williams opined that Mr. Cayce had no limitation for standing or sitting.  He added that Mr. Cayce could walk for four hours each day.  Mr. Cayce told Dr. Williams that he had done will [sic] since the spinal surgeries in 2002.  He reported that he had tried to help his parents do some construction work on a building.  (Exhibit 8F/2).  He stopped doing

this activity when he climbed on a ladder, lost his balance and fell. Yet, despite this alleged lack of balance, Mr. Cayce also reported that he had gone skating with a friend. (8F/2).

Dr. Williams's physical examination revealed that Mr. Cayce walked with a slightly antalgic gait. Dr. Williams did not find range of motion limitations. He reported that Mr. Cayce had normal strength in his arms and legs. These findings are consistent with Mr. Cayce's testimony about his good capacity for walking and sitting. They are also consistent with an RFC for a reduced range of light work.

(*Id.*) While the ALJ states that Dr. Williams' findings are consistent with Cayce's testimony about his good capacity for sitting and walking, he does not indicate which findings are consistent. It is also unclear in these two paragraphs why the ALJ concluded that Cayce could perform light work which requires six hours of standing or walking (off and on) and which is contrary to Dr. Williams' four-hour walking limitation. *See* SSR 83-10 ("the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday"). The ALJ noted Dr. Williams' four-hour walking limitation in his narrative but did not indicate whether he found it unsupported or inconsistent. (*See id.*) The Court can only guess whether the ALJ discounted the walking limitation or merely overlooked it.

Similarly, there is no indication of how the ALJ arrived at the conclusion that Cayce could occasionally balance. (*See* R. 52-53.) Dr. Williams determined that Cayce could never balance, a finding that the ALJ did not include in his summary of Dr. Williams' opinion. (*Compare* R. 550 *with* R. 52.) The ALJ did, however, summarize some of the anecdotal evidence of Cayce's balance issues that Dr. Williams considered. (R. 52.) Of note is the ALJ's reference to Cayce's attempt to roller skate "despite [his] alleged lack of

balance" which omits that the roller-skating attempt ended with a fall that caused the severe impairment of a left leg fracture.  (R. 52, 546.)  Perhaps, as the Commissioner asserts, the ALJ relied on Dr. Sellman's opinion which "supported a greater functional capacity than Dr. Williams found."  (Doc. No. 17 at 12.) But, not only did the ALJ not mention balancing in his summary of Dr. Sellman's opinion, he also failed to include that assessment in a discussion of supportability and consistency of either doctor's opinion.  (R. 52.)  Adding to the lack of clarity is the ALJ's statement that Dr. Williams' findings are "consistent with an RFC for a reduced range of light work" when it is entirely unclear what limitations the ALJ would include based on his summary of the doctor's opinion.  (*Id.*)

In fact, Dr. Sellman opined that Dr. Williams' "brief opinion . . . offered no clear explanation or justification," "is not supported by the objective finding[s,]" and "is given little weight in this assessment."  (R. 123.)  Based on Dr. Sellman's comments, it seems odd that the ALJ could find both her and Dr. Williams' opinions to be persuasive. Inexplicably, this is all the ALJ had to say about Dr. Sellman's opinion:

> One month later, in October 2018, state agency reviewing physician, Gloria Sellman, M.D., opined that Mr. Cayce retained an RFC for light work with significant postural and environmental limitations.  Although I added some manipulative limitations, I found this opinion persuasive.

(R. 52.)  The Court finds this persuasiveness evaluation of Dr. Sellman's opinion by the ALJ is conclusory and prevents meaningful judicial review.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).  While the ALJ's decision need not provide a detailed description of the supportability and consistency (or lack thereof) of each finding, the ALJ here fails to explain the connection between the RFC finding and Dr. Williams'

"persuasive" opinion <u>and</u> fails to provide a meaningful evaluation of the persuasiveness of Dr. Sellman's opinion. *See Dease*, 2022 WL 428173, at \*5; 20 C.F.R. § 416.920c(b)(2). Furthermore, if as the Commissioner asserts, the ALJ found the two opinions of Drs. Sellman and Williams equally persuasive but not identical, he was required to explain how he considered the remaining factors listed in 20 C.F.R. § 416.920c(b)(2). *See Gogel*, 2021 WL 426128, at \*9. At this time, the Court simply cannot conduct a meaningful review and cannot conclude that the RFC is supported by substantial evidence.

### 2. Dr. Sellman's opinion regarding environmental limitations

Cayce notes that although the ALJ found Dr. Sellman's opinion persuasive, the ALJ "completely ignore[d]" Dr. Sellman's finding that Cayce should avoid concentrated exposure to heat and cold. (Doc. No. 14 at 10.) The Commissioner answers, again, that there is no requirement that the ALJ adopt every finding from a persuasive opinion into his RFC. (Doc. No. 17. at 13.) The Commissioner cites *Freyhagen v. Comm'r Soc. Sec.*, Case No. 3:18-cv-1108-J-MCR, 2019 WL 4686800 (M.D. Fla. 2019), in support of her argument.

The Court is not persuaded by the Commissioner's argument. This case is inapposite from *Freyhagen* because in that case the ALJ provided "specific reasons" for disregarding findings from otherwise persuasive sources. *See Freyhagen,* 2019 WL 4686800, at \*8. Here, the ALJ gave no reasons for ignoring any of Dr. Sellman's findings although he did note that he added some manipulative limitations. (R. 52.) Nor did the ALJ provide more than a conclusory statement about the persuasiveness of Dr. Sellman's opinion overall. (R. 52.) Thus, the Court is prohibited from conducting a meaningful

review.  The ALJ's RFC and determination are not supported by substantial evidence where the ALJ neglects to evaluate the persuasiveness of a medical source's opinions according to 20 C.F.R. § 415.920c(b)(2).

    3.  Dr. Patterson's opinion regarding mental limitations

Finally, Cayce takes issue with the ALJ's "oversimplification" of Dr. Patterson's opinion of his mental limitations.  (Doc. No. 14 at 11.)  He alleges that the ALJ's RFC limits only the time spent interacting with the public, co-workers, and supervisors whereas Dr. Patterson limited the "quality" of the interactions.  (*Id.* at 12.)  He further alleges that the ALJ's finding that he could "perform simple, routine, and repetitive tasks" is inconsistent with Dr. Patterson's opinion which limited him to detailed tasks or instructions.  (*Id*. at 12.)  According to Cayce, a more appropriate RFC would have precluded all three of the jobs identified by the VE.  (*Id.* at 12-13.)

The Commissioner does not directly address Cayce's argument that the ALJ failed to consider the "quality" limitations that Dr. Patterson placed on Cayce's mental and social limitations.  (*See* Doc. No. 17 at 13-14.)  Rather, she recounts Cayce's hearing testimony and surveys Cayce's treatment records and the notes from Dr. Patterson's opinion.  (Doc. No. 17 at 14.)  Comparing the ALJ's decision to the evidence in the record, she asserts that substantial evidence supports the ALJ's mental RFC finding.  (*Id.*)

The ALJ first summarized the opinion of consultative psychological examiner, Dr. Bill Ferguson and concluded that his opinion was unpersuasive.  (R. 53.)  Specifically, the ALJ noted that he found Dr. Ferguson's opinion that Cayce had "marked limitations" inconsistent with the treatment records that Cayce provided from his primary care

physician. (*Id.*) Then the ALJ proceeded to Dr. Patterson's opinion which he found persuasive, specifically noting that her opinion "rendered a reasonable interpretation of Dr. Ferguson's findings, when she determined that [Cayce] had a severe mental impairment with moderate limitations in social interaction and in concentration, persistence or maintaining pace." (R. 53.)

The new regulations require that the persuasiveness of each opinion be evaluated in terms of supportability and consistency. *Nix*, 2021 WL 3089309 at *6; 20 C.F.R. § 416.920c(b)(2). Without that information, the Court is unable to determine whether the ALJ only partially relied on Dr. Patterson's opinion or just overlooked the limitations she suggested regarding the quality of Cayce's social interactions. "To ascertain whether substantial evidence supports a determination . . . the Court should be able to discern the connection between the sources' opinions and assessments and the ALJ's determination." *Dease*, 2022 WL 428173 at *3. Here the Court cannot.

Accordingly, this case is due to be remanded under 42 U.S.C. § 405(g) for the ALJ to clarify the basis for his determination by explaining how he considered the persuasiveness of the medical sources in terms of supportability and consistency as required by 20 C.F.R. § 416.920c(b)(2).

B.     The Appeals Council did not err.

Cayce next argues that the Appeals Council erred by failing to consider "new and material" evidence submitted for review. (Doc. No. 14 at 13.) Cayce contends the new evidence he submitted from Southeast Brain and Spine Surgery, Bridgeway Diagnostics, Dr. Daniel Kosobucki, Midtown Medical Center, and Douglas Dermatology & Skin Cancer

Specialists would have likely changed the ALJ's decision.  (*Id.* at 14-15.)  Cayce claims

that new evidence submitted from Southeast Brain and Spine Surgery and his treating

physician, Dr. Kosobucki, shows that Cayce developed hydrocephalus in February 2020

and underwent shunt reprogramming in March 2020.  (*Id.* at 14.)  Cayce contends a

reasonable ALJ could conclude that this medical evidence showing he needed surgical

intervention for an ongoing impairment suggests that he could meet or equal Listing 11.05

of 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. §§ 416.920(d), 416.925, and

416.926.[7]  (*Id.*)  He also presented evidence from Douglas Dermatology, dated August

2019 through December 2019, that showed treatment for tinea corporis and basal cell

carcinoma on his neck.  (*Id.* at 15)  According to Cayce, those records show that he could

---

[7] Listing 11.05 provides:

> Benign brain tumors, characterized by A or B:
>> A. Disorganization of motor function in two extremities (*see* 11.00D1), resulting in an extreme limitation (*see* 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or
>> B. Marked limitation (*see* 11.00G2) in physical functioning (*see* 11.00G3a), and in one of the following:
>>> 1. Understanding, remembering, or applying information (*see* 11.00G3b(i)); or
>>> 2. Interacting with others (*see* 11.00G3b(ii)); or
>>> 3. Concentrating, persisting, or maintaining pace (*see* 11.00G3b(iii)); or
>>> 4. Adapting or managing oneself (*see* 11.00G3b(iv))."

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.05.

meet or equal Listing 8.04 (chronic fungal infections)[8] and Listing 13.02 (soft tissue cancer of the head and neck).[9]  (*Id.*)

The Commissioner asserts that the Appeals Council considered and rejected the new evidence and concluded that the new evidence was not chronologically relevant or was not reasonably likely to change the outcome of the ALJ's decision.  (Doc. No. 17 at 18.)  She notes that Cayce made no new complaints about functioning related to the hydrocephalus or medulloblastoma.  (*Id.* at 19.)  Regarding the dermatology evidence, the Commissioner notes that both the tinea corporis and the basal cell carcinoma were resolved with treatment and would therefore be unlikely to change the outcome of the ALJ's decision.  (*Id.* at 22.)

---

[8] Listing 8.04 provides, "[c]hronic infections of the skin or mucous membranes, with extensive fungating or extensive ulcerating skin lesions that persist for at least 3 months despite continuing treatment as prescribed."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 8.04.

[9] Listing 13.02 covers soft tissue cancers.

> Soft tissue cancers of the head and neck (except salivary glands—13.08—and thyroid gland—13.09).
>> A. Inoperable or unresectable.
>> OR
>> B. Persistent or recurrent disease following initial anticancer therapy, except persistence or recurrence in the true vocal cord.
>> OR
>> C. With metastases beyond the regional lymph nodes.
>> OR
>> D. Small-cell (oat cell) carcinoma.
>> OR
>> E. Soft tissue cancers originating in the head and neck treated with multimodal anticancer therapy (*see* 13.00E3c). Consider under a disability until at least 18 months from the date of diagnosis. Thereafter, evaluate any residual impairment(s) under the criteria for the affected body system.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 13.02.

A claimant is allowed to present new evidence at each stage of the administrative process, including before the Appeals Council.  20 C.F.R. § 404.900(b).  "The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Douglas v. Comm'r of Soc. Sec.*, 764 F. App'x 862, 862–63 (11th Cir. 2019) (quoting *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007)).  When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision [the denial of review] is ... subject to judicial review because it amounts to an error of law." *Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998) (citation omitted).  "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

To succeed on a claim that remand is appropriate, Cayce must show that (1) new, noncumulative evidence exists, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level.  *Falge*, 150 F.3d at 1323; *Clark v. Soc. Sec. Admin., Comm'r*, 848 F. App'x 858, 861 (11th Cir. 2021).  A medical record created by a treating physician may be chronologically relevant evidence even though it did not come into existence until after the ALJ's decision is rendered.  *Dease*, 2022 WL 428173, at *6.  *See also Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1322 (11th Cir. 2015).  When the Appeals Council

refuses to consider new evidence, its decision is reviewed *de novo*.  *Clark*, 848 F. App'x at 861.

>1.    Appeals Council decision

The Appeals Council found that the records Cayce submitted from Elite Family Medicine and Douglas Dermatology & Skin Cancer Specialists[10] did not show a reasonable probability that they would change the outcome of the ALJ decision.  (R. 2.)  The Appeals Council further found that the records from Consierge Medicine of Columbus, Bridgeway Diagnostic, Southeast Brain and Spine Surgery and Douglas Dermatology & Skin Cancer Specialists,[11] do not relate to the period at issue because the ALJ decided the case through December 27, 2019, and those records predate the ALJ's decision.  (*Id.*).

>2.    Evidence related to Cayce's brain tumor

The new evidence provided by Cayce does not support his arguments.  Cayce presented evidence that he was referred for an MRI of the brain based on a February 5, 2020, six month follow up visit with Dr. Kosobucki.  (R. 27-28.)  The record lists only "Chief Complaints: 1. 6 month f/u" as the reason for the visit.  (R. 27.)  Cayce made no complaints related to the tumor or his functioning although Dr. Kosobucki notes "continuing issues with ataxia and gait disturbance."  (*Id.*)  Dr. Kosobucki further notes that it "[h]as been several years since his shunt has been evaluated" before referring him

---

[10] These records from Douglas Dermatology & Skin Cancer Specialists covered August 9, 2019 through December 17, 2019.  (R. 2.)

[11] These records from Douglas Dermatology & Skin Cancer Specialists are dated January 2, 2020. (R. 2.)

for an MRI to determine the shunt status.  (*Id.*)  The MRI report notes two parasagittal frontal meningiomas which had mildly increased in size from his previous MRI in 2008 but "no hydrocephalus or intracranial herniation" and "no evidence of acute intercranial abnormality."[12]  (R. 17.)  On February 14, the day after the MRI, Cayce underwent a shunt reprogramming although it is unclear what precipitated the need.  (R. 13.)  He had a follow up visit with Dr. Kosobucki on March 31, 2020, which notes only that a repeat MRI is suggested in one year.  (R. 10.)

The applicable regulations state that the Appeals Council will review a case if new evidence is material, chronologically relevant, and there is a "reasonable probability" that it will change the outcome of the decision.  20 C.F.R. § 416.1470(a)(5).  Medical statements made by a claimant's treating physician may be chronologically relevant though made after the ALJ's decision because a physician in that position would understand the symptoms from their early formation throughout his treatment.  *Dease*, 2022 WL 428173 at *6. However, here there is no identifiable statement made by Cayce's treating physician with regard to any disability or physical or mental limitations in the new evidence.  (*See* R. 27-28.)  Cayce presents only evidence of what appears to be a routine follow up visit to monitor his shunt.  It occurred some three months after his hearing date and does not relate back to

---

[12] Cayce asserts that the "new evidence shows [he] developed hydrocephalus in February of 2020 which required surgical intervention after MRI radiological testing."  (Doc. No. 14 at 14.) However, the notes from that visit state that there was no hydrocephalus.  The Court can find no support for his assertion other than a note indicating that the February 14, 2020, visit was a "FU [follow up] shunt reprogram" for the "previously diagnosed problem" of "Hydrocephalus-programmable shunt."  (R. 13.)  That phrase does not indicate a diagnosis of newly developed hydrocephalus.

the period before the hearing.  Although he is referred for an MRI and a shunt reprogramming, there is nothing in the record to indicate that (a) this is not a routine process and (b) it concerns the time period under review by the ALJ.  Moreover, it is improbable that the new evidence could have reasonably prompted the ALJ to change his opinion that the "symptoms are stable without escalating treatment."  (R. 48.)  Because the new evidence related to Cayce's brain tumor is not likely to result in a different disability determination, the Appeals Council did not err by declining to consider it.

       3.     Evidence related to Cayce's tinea corporis and basal cell carcinoma

Likewise, the new evidence provided by Cayce does not support his arguments on these ailments.  As to Cayce's tinea corporis, the hearing evidence shows that Cayce had a fungal infection on his chest and neck which was evaluated in February 22, 2019 (R. 552) and August 9, 2019 (R. 84).  It is not clear whether the infection resolved and recurred or was ongoing during that time, but the objective evidence indicates that the rash was mild and not the source of any pain.  (R. 84.)  The record further indicates it was treated with a topical cream and by August 30, 2019, it was almost clear.  (*Id.*)  The infection was resolved before November 15, 2019 (R. 85), and Cayce "[d]enie[d] [the] rash" at his February 5, 2020, visit with Dr. Kosobucki.  (R. 23, 27.)

In regard to the basal cell carcinoma on Cayce's neck, the basal cell carcinoma was confirmed by biopsy on November 15, 2019 (R. 85) and successful Mohs surgery was performed on December 17, 2019 (R. 87).  The prognosis after surgery was "excellent." (*Id.*)  On January 2, 2020, the sutures were removed and "the examination of the site was clean, with some drainage."  (R. 42.)  There is no mention of further treatment.  (*Id.*)

The Court concludes that the new evidence presented of tinea corporis and basal cell carcinoma is not material because there is not a "reasonable probability" that it would change the outcome of the ALJ's decision.  20 C.F.R. § 416.1470(a)(5).  Both conditions were chronologically relevant because they started before the ALJ rendered his determination, but as the Commissioner notes, both conditions were resolved at the time the evidence was submitted.  Contrary to Cayce's assertion, the fungal infection would not have met Listing 8.04 because it had resolved and the doctor's mention that recurrence is common is not indicative of a chronic condition as the listing requires.  Further the objective evidence does not support a finding of "extensive fungating or extensive ulcerating of the skin" as required.  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 8.04.  Nor can the basal cell carcinoma meet Listing 13.02 because it was operable, not expected to be recurrent, and required no further treatment.  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 13.02. Accordingly, the Appeals Council did not commit reversible error for refusing to consider Cayce's new evidence.

## VI.    CONCLUSION

After review of the administrative record, and considering all of Cayce's arguments, the Court finds the Commissioner's decision to deny his claim for Supplemental Security Income is not supported by substantial evidence or in accordance with applicable law. Accordingly, it is hereby

ORDERED that the decision of the Commissioner is REVERSED and REMANDED.

A separate judgment will be issued.

DONE this 28th day of March, 2022.


JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE